IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY, | § § § § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 1:21-CV-613 |
| BANK OF AMERICA N.A., THE RESERVE TRUST COMPANY, BANCO SANTANDER MEXICO, S.A., IOC CAPITAL LLC, DANIEL NEVES, KELLY NEVES, JNFX LTD., KIWON SUNG, ZENTENO E. IMAGEN, and GRUPO CAMBERRY SC, | § § § § § § § § | |
| Defendants. | § | |

**VERIFIED COMPLAINT**

Plaintiff, Old Republic National Title Insurance Company, brings this complaint for a declaratory judgment and injunctive relief against Defendants Bank of America N.A., The Reserve Trust Company, Banco Santander Mexico, S.A., IOC Capital LLC, Daniel Neves, Kelly Neves, JNFX LTD., Kiwon Sung, Zenteno E. Imagen, and Grupo Camberry SC.

**Nature of the Action**

1.  This action concerns five fraudulent wire transfers and brings claims for declaratory and injunction relief.

**The Parties**

2.  Old Republic National Title Insurance Company is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Florida.

3. Bank of America, N.A., is a national banking association organized and existing under the laws of the State of Delaware, with its principal place of business in Charlotte, North Carolina.

4. The Reserve Trust Company is identified in the Fraudulent Wire Instructions as having an address of 2606 Judson Road, Longview, TX 79705.

5. Banco Santander Mexico, S.A. ("Santander") is a multinational financial services company organized under the laws of Mexico, with its principal place of business in Mexico City, Mexico.

6. IOC Capital LLC ("IOC") is identified in the Fraudulent Wire Instructions as having an address of 1695 TX-46, New Braunfels, TX 78132, but upon information and belief has a business address of 303 Greener Drive, Leander, TX 78641-7992.

7. Daniel Neves is the Registered Agent and principal of IOC, which has exercised control over the Diverted Funds that were received by IOC. Mr. Neves is a citizen of the State of Texas who resides at 303 Greener Drive, Leander, TX 78641-7992.

8. Upon information and belief, Kelly Neves is a principal of IOC that has exercised control over the Diverted Funds that were received by IOC. Ms. Neves is a citizen of the State of Texas who resides at 303 Greener Drive, Leander, TX 78641-7992, TX.  Daniel Neves and Kelly Neves are hereinafter sometimes referred to collectively as the Individual Defendants."

9. JNFX Ltd. ("JNFX") is identified in the Fraudulent Wire Instructions as having an address of 3209 Courtyard Dr., Midland, TX 79705.

10. Kiwon Sung is identified in the Fraudulent Wire Instructions as having an address of 23910 Southwest Fwy, Rosenberg, TX 77471, but upon information and belief is an individual

doing business as the Law Office of Kiwon Sung, who resides in, and is a citizen of, the State of California.

11. Zenteno E. Imagen is identified in the Fraudulent Wire Instructions as having an address of 527 E. Commerce St., Fairfield, TX 75840.

12. Grupo Camberry SC is identified in the Fraudulent Wire Instructions as having an address of 101 Jim Wright Fwy. N, Fort Worth, TX 76108.

13. Bank of America, N.A., Santander, and The Reserve Trust Company are hereinafter sometimes referred to collectively as the "Financial Institution Defendants." IOC, JNFX, Kiwon Sung doing business as the Law Office of Kiwon Sung, Zenteno E. Imagen, and Grupo Camberry SC are hereinafter sometimes referred to collectively as the "Account Holder Defendants."

### Jurisdiction and Venue

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and the Defendants, and the amount in controversy exceeds $75,000.

15. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the activities giving rise to the claims alleged herein have occurred in this district. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b)(3) because at least one defendant is subject to the court's personal jurisdiction with respect to this action.

### General Allegations

16. On June 30, 2021, Old Republic National Title Insurance Company ("Old Republic") served as the escrowee for the receipt and disbursement of sales proceeds concerning

real property located in Jonesboro, Georgia (the "Property") by InterCapital Aslan LLC, as "Seller," to 100 Riverview (GA) Owner LLC, as "Buyer," for $48.5 million (the "Sale").

17. At the time of the Sale's closing (the "Closing"), the Property was encumbered by a mortgage granted by the Seller (the "Mortgage") to secure a loan (the "Mortgage Loan"), which was held by Fannie Mae and serviced by Greystone Servicing Company LLC ("Greystone").

18. To clear title to the Property in conjunction with the Sale, the Mortgage Loan had to be paid off at the Closing so that the Mortgage would be released as a lien against the Property.

19. For this purpose, Old Republic disbursed over $29 million of the Sale proceeds from its escrow account to pay off the Mortgage Loan (the "Greystone Payoff"); however, days later, Old Republic learned that the wire transfer instructions upon which the Greystone Payoff was based were fraudulent, and that Greystone received only about one-third of this amount.

20. In particular, before the Closing, a person purporting to be "Rob Russell," an alleged Greystone employee whose real identity is unknown to Old Republic (the "Fraudster") provided Old Republic with fraudulent wire transfer instructions for the Greystone Payoff (the "Fraudulent Wire Instructions").

21. Per the Fraudulent Wire Instructions, only about $10 million of the proceeds intended to complete the Greystone Payoff was to be wired to Greystone, and the balance was to be disbursed to five purported investors in the Mortgage Loan.

22. Old Republic disbursed the funds intended to complete the Greystone Payoff in reliance on, and in accordance with, the Fraudster's communications with it and the Fraudulent Wire Instructions.

23. As a result, Greystone received only about $10 million of the proceeds intended to pay off the $29 million Mortgage Loan, and the balance of the intended Greystone Payoff was wired to and received by Defendants.

24. In conjunction with the Closing of the Sale, Old Republic agreed to issue an owner's policy of title insurance to the Buyer (also referred to as "Old Republic's Insured"), which reflected Old Republic's Insured's ownership of the Property free and clear of the Mortgage (the "Owner's Policy").

25. Greystone is unwilling to cause the Mortgage to be released as a lien against the Property unless the Mortgage Loan is paid in full.

26. Old Republic has been damaged by the Fraudster's action because it insured the Buyer's title to the Property free and clear of the Mortgage, and it had to pay off the Mortgage Loan to satisfy its obligations under the Owner's Policy.

27. Old Republic brings this action to enjoin the disbursement or use of the misdirected funds, to recover those funds, and to obtain such other and further relief as the Court deems just.

## Causes of Action

### Count I (Declaratory Judgment)

28. Old Republic incorporates and re-alleges the foregoing allegations as though fully set forth herein.

29. Upon information and belief, on or about June 21, 2021, Greystone sent a one page payoff letter to the Seller that set forth the amount of the Greystone Payoff and provided wire instructions for the payoff, a copy of which is attached hereto as Exhibit A (the "June 21 Payoff Letter"). Throughout this Complaint and its Exhibits, sensitive and personal information, such as account numbers have been redacted for confidentiality and security purposes.

30. On or about June 22, 2021, the Fraudster sent the Seller's attorney's paralegal ("Messer") and Old Republic a fraudulent version of the June 21 Payoff Letter that removed Greystone's wire instructions, indicated that wire instructions would be provided subsequently by fax, and directed that inquiries concerning the Payoff be directed to "Rob Russell" with an email address of fmpayoffs@greyco.com, a copy of which is attached hereto as Exhibit B (the "Initial Fraudulent Payoff Letter").

31. Prior to the Closing, the Fraudster engaged in a series of communications with Old Republic intended to redirect and misappropriate the Greystone Payoff, the majority of which were via email. Copies of many of these communications are attached hereto as Group Exhibit C (the "Fraudulent Emails").

32. The Fraudster purported to send most of his emails on behalf of Greystone, but used an email address of fmpayoffs@rreyco.com, which was deceptively similar to Greystone's domain, using "rreyco" instead of "greyco."

33. Initially, the Fraudster was introduced to Old Republic's personnel who were involved in the Sale through an email from Messer, whose email address is lmesser@firselross.com. See Ex. C., p. 4.

34. Following that introduction, the Fraudster not only communicated with Old Republic from his own deceptive email address, but purported to (a) communicate with Messer on emails that were copied to Old Republic, (b) copy Messer on communications with Old Republic, and (c) communicate with Old Republic on behalf of Messer by using an email address that was deceptively similar to Messer's, lmesser@fiirselross.com, which contains an extra "i" in "firsel." See Ex.C.

35.     On the day before the Closing, June 29, 2021, Laurel Arlis, the Old Republic closer for the Sale, received a copy of an email from the Fraudster purportedly sent on behalf of Greystone to Messer, but which actually was sent to Messer's fraudulent email address (lmesser@fiirselross.com), a copy of which is attached as Exhibit D.

36.     The 6/29 Email contained a two-page attachment.  The first page of the attachment purported to be Greystone's payoff letter (the "Revised Fraudulent Payoff Letter"), but unlike the June 21 Payoff Letter that had indicated that wire instructions would be faxed separately, referenced a second page containing the Fraudulent Wire Instructions directing payment to six entities, including Greystone, in the amounts listed thereon and summarized as follows:

    Bank Name: Wells Fargo Bank
    Account Holder: IOC Capital LLC
    Account No:           285
    Amount: $ 7,000,000.00


    Bank Name: The Reserve Trust Company
    Account Holder: JNFX Ltd
    Account No:            2601
    Amount: $3,000,000.00


    Bank Name: Bank of America
    Account Holder: Law Office of Kiwon Sung
    Account No:           0766
    Amount: $ 2,500,000.00


    Bank Name: Santander Bank
    Account Holder: Enteno E Imagen
    Account No:            0478
    Amount: $3,500,000.00


    Bank Name: Santander Bank
    Account Holder: Grupo Camberry Sc
    Account No:            8209
    Amount: $3,500,000.00

      Bank Name: Bank of America
      Account Holder: Greystone Servicing Company Custodial Clearing
      Account No: ███████7183
      Amount: $10,496,151.24

37. Before disbursing the funds needed to make the Greystone Payoff, Old Republic confirmed the payoff instructions by telephone with the Fraudster, who was identified in the Payoff Letter as the contact person for Greystone.

38. Per all of the foregoing payoff letters, the total amount of the Greystone Payoff was $29,996,151.54. Per the June 21 Payoff Letter, all of that amount was to be wired to Greystone. However, per the Fraudulent Wire Instructions, only $10,496,151.54 was to be wired to Greystone, and the balance of $19,332,680.84 was to be wired to the remaining parties at the financial institutions listed on, and in accordance with the Fraudulent Wire Instructions (the "Diverted Funds").

39. Old Republic caused the escrowed funds that were intended to pay off the Mortgage Loan to be disbursed as instructed in the Fraudulent Wire Instructions.

40. On July 7, 2021, Old Republic learned that there was a problem with the Fraudulent Wire Instructions and immediately took steps to investigate and address the Fraudster's actions and misdirection of the Diverted Funds.

41. Contemporaneously, the Fraudster continued to engage in fraudulent conduct by sending an email to Old Republic on July 7, 2021, asking it to recall and redirect certain of the wire transfers, a copy of which is attached hereto as Exhibit E.

42. Through its investigation, Old Republic determined that the full amount of the Greystone Payoff should have been sent to Greystone, and requested and obtained a payoff letter from Greystone setting forth the remaining amount claimed due by Greystone to pay off the

Mortgage and cause it to be released from title to the Property. A copy of Greystone's July 9, 2021 payoff letter is attached hereto as Exhibit F (the "July 9 Payoff Letter").

43. Old Republic has made a payment to Greystone in satisfaction of the July 9 Payoff Letter so that its Insured's title to the Property will be free and clear of the Mortgage in accordance with the terms of the Owner's Policy, for which it should be reimbursed from the Diverted Funds that were intended for that purpose.

44. Upon information and belief, the Diverted Funds that were wired to Wells Fargo Bank, N.A., are no longer being held by Wells Fargo Bank, N.A.

45. Old Republic has communicated with Bank of America, N.A., and asked it to freeze funds representing the Diverted Funds in its customer's account, but needs the force of a Court Order to assure that the funds will be, and will remain, frozen until its rights in the funds are determined by this Court.

46. In addition, Old Republic has communicated with Kiwon Sung, who has been cooperative to date and who Old Republic believes will cooperate in the return of the $2.5 million of Diverted Funds received in his bank account once its right to those funds is clearly determined.

47. Old Republic also has communicated with Dan Neves on behalf of IOC to seek the return of the $7 million of Diverted Funds received in its bank account (the "IOC Account"), but those efforts have been unsuccessful.

48. To the contrary, upon information and belief, the Individual Defendants have caused the Diverted Funds in the IOC Account to be transferred out of such account to person(s) other than Old Republic.

49. As of the filing of this Complaint, Old Republic has not communicated with any of the other defendants about the Diverted Funds received by them as listed on the Fraudulent Wire Instructions.

50. Old Republic has a right and interest in the Diverted Funds that is superior to the interests, if any, of the Defendants in the Diverted Funds.

51. An actual controversy exists between Old Republic and the Defendants regarding the ownership and disposition of the Diverted Funds that is in need of judicial resolution.

52. A case or controversy exists between Old Republic and the Defendants and, it is desirable and feasible that the court declare the rights of Old Republic in and to the Diverted Funds.

WHEREFORE, Old Republic requests that this Court issue a Declaratory Judgment that (a) it is entitled to the Diverted Funds; (b) each Financial Institution Defendant be directed to remit to Old Republic any portion of the Diverted Funds held by them as a result of an administrative freeze or Order of this Court; (c) to the extent not remitted pursuant to subparagraph (b), each Account Holder Defendant and the Individual Defendants that received, controlled, or disbursed a portion of the Diverted Funds remit to Old Republic an amount equal to the Diverted funds received, controlled or disbursed by them; and (d)  and grant such other and further relief as the Court deems just.

### Count II (Temporary, Preliminary, and Permanent Injunctive Relief)

53. Old Republic incorporates and realleges the allegations of Count I of this Complaint as though fully set forth herein.

54. Defendants are in possession of some or all of the Diverted Funds.

55. The Diverted Funds are specific, identifiable assets of which Old Republic was the escrowee, and which it was fraudulently induced to transfer to the bank accounts of the Account Holder Defendants at the respective Financial Institution Defendants.

56. Despite Old Republic's superior right and interest in the Diverted Funds, in the absence of injunctive relief, the Account Holder Defendants and the Individual Defendants could withdraw the Diverted Funds that are in their respective bank accounts or further transfer such funds, and the Financial Institution Defendants could permit such withdrawals.

57. In the absence of injunctive relief, the Fraudster has shown an ability to manipulate people and electronic data and could attempt to withdraw, disburse, or otherwise use the Diverted Funds in furtherance of the on-going fraudulent scheme described above.

58. The Financial Institution Defendants should be enjoined immediately and restrained from allowing any withdrawals or other use of the Diverted Funds in their possession or control pending the adjudication of the rights of the parties in and to those funds under Count I of this Complaint.

59. The Account Holder Defendants and the Individual Defendants should be enjoined immediately and restrained from using any of the Diverted Funds in their possession or control pending the adjudication of the rights of the parties in and to those funds under Count I of this Complaint.

60. Old Republic is likely to succeed on the merits of this lawsuit because the Fraudster wrongfully caused Old Republic to divert almost $20 million of the proceeds of the Sale from the Payoff due to Greystone, Old Republic will have to satisfy the Greystone Payoff in full in order to clear the Mortgage from title to the Property and satisfy its obligations under the Policy, and none

of the Defendants gave any consideration for, or have any legitimate right or interest in, the Diverted Funds.

61.     Unless this Court grants Old Republic's application and restrains Defendants from the acts described above, Old Republic will suffer probable, imminent, and irreparable injury for which there is no adequate remedy at law to give Old Republic complete, final, and equitable relief. More specifically:

(a)     Harm to Old Republic is imminent and probable because a fraud has been committed, the Fraudster is continuing his efforts to pursue the fraudulent scheme, and the funds in the bank accounts of the Account Holder Defendants or that are in the possession or control of the Account holder Defendants or the Individual Defendants can be withdrawn in the absence of injunctive relief.

(b)     Old Republic will suffer irreparable injury because it has no relationships with, or control over, Defendants that would entitle it to the return of the Diverted Funds if they are used by the Account Holder Defendants or further diverted by the Fraudster or the Individual Defendants.

(c)     There is no adequate remedy at law that will give Old Republic complete, final, and equitable relief because, once the Diverted Funds are used, they cannot be recovered, especially in the case of the Fraudster who has shown an ability to manipulate people and electronic data and could attempt to withdraw, disburse, or otherwise use the Diverted Funds in furtherance of the on-going fraudulent scheme described above.

(d)     The comparative injury or balance of equities and hardships to the parties and to the public interest supports granting injunctive relief because (i) a fraud has been committed that needs to be addressed; (ii) Old Republic has been deprived of the

Diverted Funds without legal justification and has advanced funds to complete the Greystone Payoff (for which it should be reimbursed from the Diverted Funds); (iii) the Financial Institution Defendants are not stakeholders and will not be adversely affected by enjoining the disbursement of the Diverted Funds held by them; (iv) the Account Holder Defendants and the Individual Defendants have provided no consideration for, and have no entitlement to the Diverted Funds in their respective accounts; and (v) the failure to enjoin the use of funds fraudulently obtained will encourage future fraudulent conduct.

62. The requested injunctive relief will maintain the status quo between the grant of the temporary injunction and trial because the Diverted Funds in the bank accounts or the possession and control of the Account Holder Defendants and the Individual Defendants will be frozen until this Court can adjudicate the rights of the parties in and to the Diverted Funds on the merits.

63. Ex parte relief on Old Republic's application for a Temporary Restraining Order is appropriate in light of the Fraudster's commission of an almost $20 million fraud in which the Diverted Funds have been transferred to third parties over which Old Republic has no control, the Fraudster continues to pursue his fraudulent scheme, and Old Republic will suffer an immediate an irreparable injury before notice can be served on Defendants and a hearing held on the application for temporary restraining order.

WHEREFORE, for the reasons set forth in this verified Complaint, Old Republic requests that the Court issue a Temporary Restraining Order ex parte immediately enjoining Defendants from the acts described above to protect Old Republic from the irreparable harm described above and to maintain the status quo in the interim before the application for temporary injunction may be heard, and thereafter grant temporary, preliminary, and permanent injunctive relief in

accordance with the allegations of the Complaint and the proofs submitted and to be submitted to the Court.

## **PRAYER FOR RELIEF**

1. WHEREFORE, Plaintiff respectfully prays that the Court grant the following relief:

   a. a judgment in favor of Plaintiff and against Defendants on all causes of action alleged herein;

   b. a declaratory judgment as described herein;

   c. a temporary restraining order, preliminary injunction, and permanent injunction pursuant to Federal Rule of Civil Procedure 65 as described herein;

   d. actual damages in an amount to be proved at trial;

   e. exemplary damages;

   f. an award to Plaintiff of any such other and/or further relief as the Court deems just and equitable under the circumstances.

Respectfully submitted,

DICKINSON WRIGHT PLLC

By:_____
John R. Nelson
State Bar No. 00797144
Zachary C. Ewing
State Bar No. 24113650
Adam T. Walton

State Bar No. 24093323  
DICKINSON WRIGHT PLLC  
607 W. 3rd Street, Suite 2500  
Austin, Texas 78701  
Telephone: 512-770-4214  
Fax: 844-670-6009  
jnelson@dickinson-wright.com  
zewing@dickinson-wright.com  
awalton@dickinson-wright.com  

*Attorneys for Plaintiff*

## Verification

I, Maria C. Filippelli, declare as follows:

1. I am the Senior Vice President and Deputy Chief Claims Counsel for Plaintiff in this case.

2. I have personal knowledge of all the facts stated in this Verified Complaint and if called upon to testify I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Verified Complaint are to the best of my knowledge true and correct, as are the documents attached as exhibits thereto.

Executed on July 12, 2021.

_____
Maria C. Filippelli